

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Erek L. Barron*
*United States Attorney*

*Kenneth S. Clark*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4859*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*
*TTY/TDD: 410-962-4462*
*Kenneth.Clark@usdoj.gov*

April 29, 2022

**VIA EMAIL AND ECF**

Honorable James K. Bredar
United States District Court
  for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

      Re:    *United States v. Juan Carlos Sandoval-Rodriguez,* Crim. Nos. JKB-16-0259, JKB-17-0589

Dear Chief Judge Bredar:

We write in advance of sentencing in the above matters, currently scheduled for May 25, 2022, to provide the Court with the Government's position.

**Factual Background**

The conduct underlying these cases is heinous and depraved. Put simply, defendant Sandoval Rodriguez slaughtered three people. For this conduct, he was convicted by two separate juries.

Between March 2016 and August 2017, the Defendant and his co-conspirators who were members/associates of MS-13 participated in several brutal murders of people they suspected were associated with rival gang members. The evidence at trial, and the verdicts by the juries, demonstrated that Defendant Sandoval Rodriguez was an integral part of three of those murders.

On March 11, 2016, the defendant and his co-conspirators planned and agreed to murder Jose Portillo ("Victim-1"), who the gang suspected of being a rival gang member. On that evening, MS-13 members/associates lured Jose to Quiet Waters Park in Annapolis, Maryland, with the intention of killing him once Jose arrived. Surveillance video from a nearby laundromat captured the defendant and Jose walking toward Quiet Waters Park on the evening of the murder. Once Jose

arrived at the park, members of the gang struck Jose in the head with a branch or stick and the members and associates of MS-13, including Sandoval-Rodriguez, proceeded to stab Jose with a knife, repeatedly, killing him. While Sandoval-Rodriguez and other members of the gang stabbed Jose, other MS-13 members/associates stood watch outside of the park to ensure no one entered or left the park, and to watch for police presence, so that the gang could complete the murder of Jose. The defendant cut his finger on the knife that he used to stab Jose.

During this time, an MS-13 co-conspirator communicated by phone and through text messages with co-conspirator Cruz-Flores, and at least one other MS-13 member/associate inside the park, to let them know that no one entered the park and they could complete the murder. After Jose was killed, MS-13 members and associates involved in the murder buried him in a shallow grave inside the park. The defendant did not bury the body because of the cut on his finger and fear that he would leave evidence at the scene. The body was not recovered until August 28, 2017, when it was exhumed by law enforcement. After his arrest, the defendant's writings about the murder of Jose as well as additional MS-13 clothing was recovered among his personal belongings in jail. As a member of MS-13, the defendant also sold Marijuana in and around the Annapolis area. Additionally, the Defendant knowingly participated in the murder of Jose to raise his status in the gang and to assert the authority of MS-13 in Annapolis.

On or about March 31, 2017, the gang lured 17-year-old Irvin Orellana (Victim 13) from Annapolis to Wheaton Regional Park, where they stabbed him over 100 times, dismembered him, removed his heart, and buried him in a clandestine grave. The jury returned guilty verdicts finding that Defendants Portillo Rodriguez, Sandoval Rodriguez, and Joya Parada participated in this murder. Defendants Portillo Rodriguez and Sandoval Rodriguez lured Orellana out and (along with other gang members) brought the victim to Wheaton Regional Park from Annapolis. They also participated directly in the murder by stabbing, cutting, and dismembering the victim. Defendant Joya Parada arrived at Wheaton Regional Park with other MS-13 members to dig the grave before the victim arrived there. Defendant Joya Parada also participated in the murder by stabbing, cutting, and dismembering the victim. The victim's chest was also cut open and his heart removed. Irvin Orellana died as a result of the stabbing, cutting, chopping and dismemberment inflicted by the defendants and their co-conspirators. After they buried the victim's body and disposed of evidence, the Defendants and other members of MS-13 all gathered in a hotel in Langley Park, Maryland to smoke marijuana and to celebrate the murder. As a result of their participation in the murder of Irvin Orellana, certain gang members were promoted within MS-13.

On June 24, 2017, the gang used a female associate to lure a 21-year-old woman, Jenni Lopez, into a car and then took her to a wooded area in Crownsville, Maryland, where she was killed. MS-13 believe that the victim had an association with a rival gang, so they decided to kill her. Defendant Portillo Rodriguez participated by helping to plan the murder and by assisting in luring the victim into a car with another MS-13 member and a female associate. The victim believed she was meeting the female associate for a date. When the victim got into the backseat of the car, Defendant Portillo Rodriguez and another MS-13 member were waiting nearby. The car was driven by a different member of MS-13, who stopped the car to allow Defendant Portillo Rodriguez and the other MS-13 member to enter the backseat on either side of the victim, trapping

her in the middle. While inside the vehicle, Defendant Portillo Rodriguez and others forced the victim on the floor of the backseat area while holding her at knifepoint. The vehicle then proceeded to pick up another member of MS-13, who was armed with a machete. The victim screamed as she was being driven around the Annapolis area before eventually arriving in the wooded area in Crownsville. For his part, Defendant Sandoval Rodriguez had gone to the wooded area in Crownsville earlier in the day to dig a hole for the victim's grave.

After the hole had been dug, other members of MS-13 met Defendant Sandoval Rodriguez in the woods in Crownsville, where they all waited for Defendant Portillo Rodriguez and others to arrive with the victim. When they arrived, the victim began to scream and begged for them not to kill her. To stop her from screaming, one of the members of MS-13 covered the victim's nose and mouth for several seconds while others held her down. The victim lost consciousness, after which Defendant Portillo Rodriguez, Defendant Sandoval Rodriguez, and others dragged her to the hole that Defendant Sandoval Rodriguez had dug. Once at the hole, the victim's clothing was removed, and MS-13 members cut off the victim's head with a machete. Defendant Portillo Rodriguez and Defendant Sandoval Rodriguez participated by stabbing and slashing the victim's body with a machete, as well as by using the machete to dismember parts of her body. Jenni Lopez died as a result of the stabbing, cutting, and chopping wounds – in addition to the dismemberment – inflicted by Defendant Portillo Rodriguez, Defendant Sandoval Rodriguez, and their co-conspirators. Once the victim's body was cut into seven separate pieces, her body was placed in the grave. The grave was filled with dirt and covered with leaves and logs. After the victim was killed, everyone involved went to the home of an MS-13 member who lived nearby and celebrated outside on the driveway. As a result of their participation in the murder of Jenni Lopez, Defendant Portillo Rodriguez, Defendant Sandoval Rodriguez, and other gang members were promoted within MS-13.

### **Criminal History**

Mr. Sandoval Rodriguez has a criminal history category of III. (PSR ¶ 79.)

### **Sentencing Guidelines Calculation**

The PSR correctly calculates the total offense level as forty-three (43). (PSR ¶ 72). As a result, the government agrees with the PSR that the guidelines range in this case should be Life (based on an offense level of 43 and a criminal history category of III). For his convictions for Murder in Aid of Racketeering, pursuant to 18 U.S.C. §1959(a)(1) (i.e., Counts 5 and 12 under JKB-16-0259 and Count 2 of JKB-17-0589), the defendant faces a statutory mandatory minimum term of life imprisonment.

Nevertheless, the Defendant argues that the mandatory life sentence should not apply because the plain language of Section 1959(a)(1) suggests a standalone fine may be an appropriate sentence and therefore the mandatory life sentence does not apply. This argument has been rejected by the Fourth Circuit and several sister circuits. *United States v. Under Seal*, 819 F.3d 715, 720 (4th Cir. 2016); *see also United States v. Rollness*, 561 F.3d 996, 997 (9th Cir. 2009)

("The notion that the [VICAR] statute contemplates the imposition of a fine without imprisonment, as the Second Circuit observed in *James,* cannot be reconciled with the extremely harsh punishments-death or life imprisonment-otherwise available for VICAR murder"); *United States v. James,* 239 F.3d 120, 126-27 (2d Cir. 2000) (internal quotations omitted); *United States v. Carson,* 455 F.3d 336, 385 n. 44 (D.C. Cir. 2006).

Thus, the mandatory minimum life sentence should apply. Even if the mandatory minimum sentences did not apply – which is not the case – under 18 U.S.C. § 3553(a) a life sentence is nevertheless appropriate as described below.

## Recommendation

The Government submits that a sentence of life is sufficient but not greater than necessary in this case when considering both the mandatory minimum and the Section 3553(a) factors. The evidence at trial and the verdicts by the juries established that Mr. Sandoval Rodriguez personally participated in three brutal murders. In addition, he was a gang leader who directed drug sales, firearm possession, recruitment, and extortions. As a sign of his unwavering allegiance to the gang, Sandoval Rodriguez wears a large MS-13 tattoo on the back of his head. He proudly took photos displaying MS-13 gang signs. He wrote letters and documents in jail demonstrating his unwavering allegiance to MS-13. Simply put, the defendant demonstrated his disregard for human life and membership in the diabolical gang when he and his co-defendants repeatedly stabbed and killed the victims. Sandoval Rodriguez was not just a participant but also a leader in the gang – he participated in the murders but also helped arrange them, got others to participate, and was integral to ensuring that they happened. In each murder, Sandoval Rodriguez lied in wait to ambush the gang's victims. The evidence demonstrated that the killings were intended solely to advance and maintain the defendant's (and others') rank within MS-13.

A life sentence will send a message to others that participating in gang activity and harming other members of the community will be punished accordingly. As this Court knows, MS-13 maintains a significant presence throughout Maryland and many assaults, extortions, and murders in recent years have been attributed to the gang. By sentencing this Defendant to life, it not only sends a message to the Defendant that this conduct will not be tolerated, but to other members of MS-13, and other gangs, that this conduct carries significant penalties if one chooses to participate in these crimes and harm others. A life sentence will also address the impact on the victim's families who lost their sons, daughter, friends, and loved ones.

Ultimately, the defendant committed the most serious crimes that one can commit, and he did so under circumstances that, far from supplying any form of mitigation, demonstrate an utter disregard for human life. Indeed, Mr. Sandoval Rodriguez reveled in the killings, which were truly unconscionable. A sentence of imprisonment for the remainder of the Defendant's natural life is both required and appropriate.

## Restitution

In this case, as the PSR notes, pursuant to 18 U.S.C. § 3663A, restitution in the total amount to be determined shall be ordered in these cases which shall include funeral and related costs. The government will submit a separate proposed restitution order.

The Government, of course, looks forward to addressing this matter – including the application of the factors under 18 U.S.C. § 3553 – further at sentencing. We will supplement this submission with any victim impact statements if and when we receive them.

Of course, please let us know if you have any questions or need any additional information.

    Sincerely,
    Erek L. Barron
    United States Attorney

By: ___/s/_____
    Kenneth S. Clark
    Zachary Stendig
    Anatoly Smolkin
    Assistant United States Attorneys

    Matthew K. Hoff
    DOJ Trial Attorney

cc:    Gerry Ruter, Esq. (via email)
       Sean Farrelly, Esq. (via email)